KETCHUM, *Appellant*, v. HARLOWE.

Equity : VACATING JUDGMENT AT LAW : ATTORNEY.  Plaintiff brought
a suit in equity to restrain the collection of a judgment for five
thousand dollars, obtained in an action against him by defendant
for breach of promise of marriage, the petition alleging as grounds
for equitable interference, that plaintiff had been misled and betrayed
by his attorney in said suit ; that, in consequence thereof, the judg-
ment was obtained against him in his absence by defendant, whom
he had never promised to marry, and that his said attorney was in-
solvent.   *Held*, (1) That defendant was not responsible for the acts
and conduct of plaintiff's attorney in the original suit, and the judg-
ment for that reason should not be vacated.   (2)  That the evidence
did not show that plaintiff's attorney was incompetent, negligent
and untrue, but the reverse, and that the bill was properly dis-
missed.

*Appeal from Moberly Court of. Common Pleas.*—HON.
G. H. BURCKHARTT, Judge.

AFFIRMED.

*W. L. Gatewood* and *Forrist & Fry* for appellant.

The proof shows clearly that if there does not appear
to be fraud on the part of the attorney for appellant,
there was a clear mistake and misunderstanding between
attorney and client as to what would be done with the
original case at the April term, when tried, which deprived
appellant of his evidence and a fair trial, which is equal
to an inevitable accident and of which respondent took
the benefit, and obtained an unconscionable verdict and
advantage, and for which the appellant is not chargeable

with negligence, and no motion for new trial being filed he is remediless at law, and the court below erred in not staying the judgment and giving the appropriate relief prayed. *Hubbard v. Eastman*, 47 N. H. 507 ; 2 Story's Eq. (10th Ed.) sec. 1574; Willard's Eq., p. 356 ; *Truly v. Wanser*, 5 Howard (U. S.) 141 ; *Meacham et al. v. Dudley*, 6 Howard 514 ; *Denton v. Mayes*, 6 John. 296 ; *Sharp v. New York*, 18 Howard 213; *Breshevan v. Price*, 57 Mo. 422 ; *Harris v. Saunders*, 38 Mo. 421. The evidence offered by appellant as to the want of property subject to execution in the attorney, Brace, was competent. It tended to show appellant was remediless at law, as to the attorney, if judgment was had against him. *Meacham et al. v. Dudley*, 6 Howard 514, *et seq*. The affidavit of appellant, substantially to the effect that the action is unfounded and fraudulent, is sufficient justification for instituting the proceeding. *Sharp v. Mayor of New York*, 18 Howard 213; *Panesi v. Bosswell*, 12 Heiskell (Tenn.) 323.

*Alexander & King* and *R. P. Giles* for respondent filed no brief.

DeArmond, C. — Margaret Harlowe sued Levi L. Ketchum in the Monroe circuit court for $20,000 damages for breach of promise of marriage. After a change of venue and two continuances, the action came to trial in the Shelby circuit court in April, 1880, and the plaintiff recovered judgment for $5,000. To restrain the collection of this judgment and set it aside, and for a trial anew upon the merits, Ketchum in May, 1880, began this suit in equity. The petition charges that appellant employed and paid an attorney to defend for him in the original suit and informed him of the facts and witnesses material to his defence. That he did not attend court when the case was tried because his attorney told him it would not then be for trial, and that he need not attend ; that the case stood on demurrer to plaintiff's petition, and, after the demurrer should be disposed of, the case must go over to the next term. He alleged that he never agreed

to marry Miss Harlowe; that his answer to her petition in denial of its allegations was true. That he was a material witness and he had other material witnesses, all of which he had told his said attorney. That unknown to him, and in his absence and that of his witnesses, the cause was tried. That his attorney made a sham, and not a real defence, and judgment was rendered against him by collusion between his attorney and his adversary. That no motion for a new trial or in arrest was filed, and he did not learn that judgment had been entered against him until after the court had finally adjourned. That his said attorney was insolvent.

The answer denied all the allegations of the petition, and alleged that appellant had no defence to the original action. That he had agreed to marry the plaintiff therein. That appellant's attorney made the best defence that could have been made, and that the judgment was fairly obtained.

The cause was taken by change of venue to the Moberly court of common pleas, and at the conclusion of the trial there the court dismissed the bill and gave judgment for costs against Ketchum and he appealed. On the trial appellant introduced in evidence the record of proceedings in the original suit, and it was admitted that the cause was docketed for trial on April 6, 1880 ; that it was tried on April 8th, and that court adjourned April 13th. He, also, read in evidence the depositions of a number of persons, including four of the jurors who tried the cause, and a sheriff and a deputy sheriff. Objections were noted at the time the depositions were taken, especially to the jurors testifying about their impressions and beliefs ; but objection seems not to have been urged in court and appellant has full benefit of this evidence. One juror did not appear to have a vivid recollection of the events of the trial, but the others agreed with the sheriff and deputy sheriff that the evidence was all on one side, and the trial short. These three jurors, too, expressed the opinion that the case was well defended, and all made out of it.

that was in it. One of them approved of the cross-examination of witnesses as skilful. Another thought there was prudence displayed by appellant's attorney in refraining from arguing the case to the jury. The third one detected, as he thought, a design on the part of the opposing attorney to encourage appellant's attorney to make an argument, that he might get the advantage of a reply. The sheriff regarded the defence as a weak one. The deputy sheriff was less brief and more interesting. He testified that he had acted as deputy sheriff five years. That Ketchum was not present at the trial, nor were any witnesses examined for him. That Col. Alexander acted for the plaintiff and Col. Brace for the defendant. This deputy, John D. Dale, adds: "Mr. Alexander made a pretty thorough examination of the witnesses for the plaintiff. I would not call Col. Brace's cross-examination of the witnesses by any means thorough. The case having been of great importance, I had, from Col. Brace's ability, expected a rigid cross-examination, but found that some witnesses he did not cross-examine at all, and others very slightly. Col. Alexander made a good speech to the jury on the part of the plaintiff; Col. Brace made no speech for the defence. I have heard many cases tried in circuit court, and I did not consider the effort of Col. Brace any defence at all, considering the importance of the case and the amount involved. I had heard much about Col. Brace's ability as a lawyer, and was surprised at the defence he made in that case. I am satisfied the case was tried in less than half a day. I gave close attention to the trial of the case and it made an impression on my mind." On cross-examination this witness said the case "was overwhelmingly proved on the part of the plaintiff," and he frankly admitted that, under the circumstances, it would have been very difficult for Col. Brace to make a speech.

Appellant detailed his employment of Col. Theo. Brace to defend the suit of Miss Harlowe against him. That he visited Col. Brace the Saturday before court be-

gan in Shelby county, and conferred with him about his suit. That his attorney told him he need not go to court or have any witnesses there, though the attorney, maybe, would take one witness over in his buggy. That the case would probably be demurred out of court, or would go over to the next term ; that it would not be tried that term and there was no need of his being there. That solely on account of these statements by his attorney and his belief of them, he remained away from court and knew nothing of any trial until, after court, he heard at Centralia about judgment having been rendered against him. That he would have been a material witness in his own behalf in the trial, and he had other material witnesses. That his answer in that case denying the allegations of the petition was true. The cross-examination was more lengthy than the ones testified about by the deputy sheriff. The appellant said it was his understanding from his attorney that the case would be demurred out of court. When asked for the names of the witnesses he directed his attorney to subpœna, his counsel interposed an objection to the question, which being overruled, he answered that he did not think he directed him to subpœna any at that time. In answer to the question, if his attorney advised him that it would be best for him not to be at court, he answered: "Not as my memory serves me." He thinks his attorney did not so advise. "He remarked, that if I had anything to attend to, to go and do it, he didn't need me." When asked if his attorney did not inquire of him if his property was all in a condition to be safe from a judgment and execution, he answered, "I don't think those are the exact words."

He said his attorney told him he was not fixing for trial, but if he should have to go into trial he could put the judgment down to one dollar and costs. To the question if he did not tell his attorney he would not submit to cross-examination, he answered, "Not if my memory serves me right." When asked if he told his attorney what he could prove by the witnesses he named, he an-

swered, after his counsel's objection to the question had been overruled, "Not as my memory serves me." The witness being asked if he had promised to marry Miss Harlowe, his counsel objected to the question, and the objection failing, the answer came, "I don't think I ever promised to marry her." He further testified that there was no engagement; he never considered there was any. That there was likely something said between them. After an unheeded objection from his counsel, to a question calling for what was said, the witness replied: "Well, sir, I remarked to her, or asked her, why she had not married, and if she was a marrying lady, and she said 'I'll marry you.' I never promised to marry the lady." This was two or three weeks before her suit was brought. "Sometimes I would see her twice a day, and sometimes not for two or three days, as well as my memory serves me." Thinks he might have gone to see her half a dozen times before this conversation. When asked if this was the first time anything was said by them about marriage, he answered: "As well as my memory serves me." Nothing was said in any subsequent visit about marrying "as well as my memory serves me." When asked if he had not told Geo. C. Brown, before he married and after he had been visiting Miss Maggie, that he was engaged to marry her, he again replied, "Not as my memory serves me." He was asked if he did not make a similar statement to Miss Rose, and if it was not understood in the Rose family that he and Miss Harlowe were engaged. He answered that they made a point to ask him a great many questions, and he would laugh and talk to them, but never had any confidential conversation with any of them, "as well as my memory serves me." On redirect examination he said he and Miss Harlowe both lived in Paris, where she kept a milliner's shop on the public square, and he "dropped in and he dropped out," that he was in feeble health. That he made no reply to Margaret's observation elicited by his query, if she was a marrying lady. Appellant offered to show the financial condition of his attorney, but the court excluded the evidence.

Respondent testified that appellant promised to marry her and she to marry him. That the engagement was made about December 2, 1878. That appellant had courted her two or three months. That she had known him ever since the death of his wife the preceding spring. That she knew nothing of his intention to break the engagement until his marriage to another woman, January 10, 1879. There was no collusion or understanding whatever about the trial or judgment. That she obtained the judgment openly and fairly.

Dora Rose testified that appellant told her he was engaged to Miss Harlowe, and invited her to live with them when they were married. Geo. C. Brown, the Monroe circuit clerk, testified that on the day of appellant's marriage to his present wife, he asked witness to see Miss Harlowe and try to pacify her mind as to the disappointment. In another conversation appellant told witness he had engaged to marry Miss Harlowe on January 10th, the day he was married to the other lady. That she wanted him to build a certain expensive kind of house, to which he objected ; and in consequence of her business she was not willing to marry him as soon as he wanted to marry, and because of the disagreement on this question the engagement was broken off.

Theodore Brace testified that he informed appellant that he had no confidence in his demurrer, and that the case would be for trial and told when it was set on the docket. That appellant asked if he could be cross-examined about his pecuniary affairs, and he told him he thought he could. That he asked appellant if he had found any witnesses, by whom anything could be proved favorable to him, and appellant said he had not. That he had previously informed appellant as to his exemptions. That appellant told him there was one matter not yet fixed, but that he could fix it in three or four days if he could have that much time. That he told appellant he would have that much time before judgment could be rendered. That appellant said he would do better to at-

tend to that matter and not go to court. "That a bird in hand, is worth two in the bush." That it was agreed that Brace should do the best he could with the case, and appellant said he would be satisfied. That they then determined that appellant should notify Judge Brace by mail when he had got his business matters arranged. That the witness received such notification from appellant by mail from Centralia before the case was tried. That he tried, so far as he was able, to have the case continued, but could not make an affidavit for a continuance. That the case had then been already twice continued for appellant. That he managed the defence to the best of his ability, and did all that he was able to do for his client. That he never heard of any witness by whom any defence could be proved.

B. F. Dobyns testified that he was assisting Col. Brace as local counsel, and was present at the trial though he took no part in it. In his judgment Brace made a skilful defence.

It is argued that appellant's counsel was guilty of *gross negligence* in the management of his client's cause, and possible fraud on the part of the attorney is hinted, also. And, again, that there *surely* was a misunderstanding between client and attorney, by which the client was deprived of the opportunity to defend against defeat and excessive recovery. Ketchum, and not Miss Harlowe, would properly be responsible for the gross neglect of Ketchum's attorney, as well as for the results following from a misunderstanding between Ketchum and his attorney. Had the original undertaking of Ketchum to marry Miss Harlowe been complied with, she might, to some extent, and under some circumstances have become a quasi-guarantor for her spouse. But in an action founded on Ketchum's alleged failure to fulfill his contract with her, we could hardly hold the lady as a guarantor of his attorney's diligence or his own understanding. The evidence shows that the attorney was not incompetent, negligent or untrue, but the reverse. We would be con-

vinced that the evidence on this point, in anticipation when this suit was brought, was widely different from the evidence as it materialized on the trial, but for the one reason that the fraud point is here hinted at, and the gross negligence argument here pressed. There is not a sign in the record that Miss Harlowe did not obtain her judgment openly and honestly. It is useless to cite authorities to support the proposition, that a court of equity may relieve from the hardships of a judgment obtained by fraud or undue advantage. In this case it does not appear that Mr. Ketchum had any defence, meritorious or meretricious, which he might have interposed in the original suit. On the contrary, it is evident, I think, that he had no defence. Indeed, he objected on the trial to all questions and all testimony concerning his alleged engagement to marry Miss Harlowe, and apparently tried to hide his "defence" from the eyes of the court. His theory, or that of his counsel, seems to have been, that all the competent evidence upon this subject is embraced in his declaration, as a witness, that his answer, denying the allegations of Miss Harlowe's petition, was true. And upon this declaration and his sworn certificate of his "misunderstanding" and his harsh, though farcical accusation of his attorney, he expected the court to vacate the judgment against him, and complains of the court's failure to fill the measure of his expectations.

It is enough to add in reference to the alleged errors in the admission and in the exclusion of evidence, that if all appellant's objections had been sustained, and he had proved all he offered to prove about his attorney's alleged insolvency, still the court would have committed no error in dismissing his bill. Of such cases as this, one in a pigeon hole is worth two in court. I think the judgment should be affirmed, in which conclusion all concur.